UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DOSTALI DOVLATOV,<br><br>Petitioner,<br><br>v.<br><br>JULIO HERNANDEZ et al.,<br><br>Respondents. | CASE NO. 2:26-cv-00826-JNW<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

## 1.  INTRODUCTION

Petitioner Dostali Dovlatov filed this Petition for a Writ of Habeas Corpus, Dkt. No. 1, requesting that Respondents provide him with a bond hearing to justify his continued detention. The Court GRANTS the petition for the reasons stated below.

## 2.  BACKGROUND

Dostali Dovlatov is a citizen of Azerbaijan in the custody of Immigration and Customs Enforcement (ICE) at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. No. 2. Dovlatov entered the United States in December 2024. On December 23, 2024, he was detained by Customs and Border Patrol near

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 1

Campo, California. Dkt. No. 6 ¶ 4. He was issued an Order of Expedited Removal. Dkt. No. 7-2. He was transferred to the San Diego Processing Center and later to the Otay Mesa Detention Center. On February 11, 2025, he was transferred to NWIPC, where he remains in custody. Dkt. No. 6 ¶ 5.

On April 16, 2025, Dovlatov was served a Notice to Appear ("NTA") charging him as "an alien present in the United States who has not been admitted or paroled." Dkt. No. 7-3 at 2. On August 7, 2025, an Immigration Judge ("IJ") denied all relief to Dovlatov and issued an order of removal to Azerbaijan. Dkt. No. 7-4 at 2. On September 4, 2025, Dovlatov appealed the IJ's order to the Board of Immigration Appeals (BIA). Dkt. No. 6 ¶ 16. The appeal remains pending.

As of the date of his petition, Dovlatov has been in detention without a bond hearing for 15 months. Dkt. No. 2.

### 3. LEGAL STANDARD

Respondents assert that Dovlatov is detained under 8 U.S.C. § 1225(b). Dkt. No. 5 at 5. Dovlatov does not challenge this classification, and the Court proceeds on that basis. While the detention of noncitizens is mandated under Section 1225(b), both the Supreme Court and the Ninth Circuit have "grappled … with whether the various immigration detention statutes may authorize indefinite or prolonged detention of detainees and, if so, may do so without providing a bond hearing." *Rodriguez v. Robbins*, 804 F.3d 1060, 1067 (9th Cir. 2015); *Jennings v. Rodriguez*, 583 U.S. 281 (2018).

Neither the Supreme Court nor the Ninth Circuit has settled on a test for assessing the constitutionality of prolonged mandatory detention. *Banda v.*

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 2

*McAleenan*, 385 F. Supp. 3d 1099, 1116 (W.D. Wash. 2019). Consequently, "[d]istrict courts have grappled with how to address due process challenges to prolonged mandatory detention[.]" *Id.* And "[n]early all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process." *Id.; see also, Maliwat v. Scott*, No. C25-788, 2025 WL 2256711, at *3 (W.D. Wash. Aug. 7, 2025) (quoting *Banda*, 385 F. Supp. 3d at 1116).

In assessing the constitutionality of prolonged mandatory detention, the *Banda* court declined to apply the test in *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976), because that test does "not resolve the more fundamental issue of whether any procedure—such as a bond hearing—must be provided." *Banda*, 385 F. Supp. 3d at 1106–07. Rather, the court conducted a case-specific analysis considering the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Id.* at 1117 (quoting *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858–59 (D. Minn. 2019)). Courts in this district have adopted the "*Banda* test" to assess when detention violates due process. *See, e.g., Maliwat*, 2025 WL 2256711, at *3–4; *Hong v. Mayorkas*, No. C20-01784, 2022 WL 1078627, at *4–5 (W.D. Wash. Apr. 11, 2022).

The parties agree that the *Banda* multi-factor test applies, and the Court will apply it here to determine whether Dovlatov's continued detention without a bond hearing has become unreasonable. *See Duvine v. Hermosillo*, No. C25-2583-SKV,

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 3

2026 WL 183374, at *3 (W.D. Wash. Jan. 9, 2026). Because the petition is resolved under *Banda*, the Court need not reach the alternative *Mathews* analysis. *See Banda*, 385 F. Supp. 3d at 1106–07.

## 4.  DISCUSSION

### 4.1  Dovlatov's continued detention without a bond hearing has become unreasonable.

#### 4.1.1  The first *Banda* factor weighs in Dovlatov's favor.

"[T]he most important factor" under the *Banda* test is the length of detention. *Banda*, 385 F. Supp. 3d at 1118. Courts have found detention similar in length or for periods even shorter than Dovlatov's requires a bond hearing. *See e.g., Lett v. Decker*, 346 F. Supp. 3d 379, 387–88 (S.D. N.Y. 2018) (ten months), *Ashemuke v. ICE Field Off. Dir.*, No. 2:23-cv-1592-RSL, 2024 WL 1683797, at *4 (W.D. Wash. Feb. 29, 2024) (eleven months); *Kumar v. Hermosillo*, No. 2:26-CV-00389-JNW, 2026 WL 523276, * 2 (W.D. Wash. Feb. 25, 2026) (nine months). Dovlatov has been detained for 15 months without a bond hearing. Dkt. No. 2. The parties agree that the first factor favors Dovlatov. The Court agrees.

#### 4.1.2  The second *Banda* factor weighs in Dovlatov's favor.

The second factor requires consideration of "how long the detention is likely to continue absent judicial intervention; in other words, the 'anticipated duration of all removal proceedings—including administrative and judicial appeals.'" *Banda*, 385 F. Supp. 3d at 1119. Respondents argue that Dovlatov's immigration appeal is "nearing a conclusion" because briefing is complete and a decision from the BIA is pending. But even if the BIA rules promptly, Dovlatov will have the opportunity to

seek review from the Ninth Circuit—a process courts have recognized can take up to two years or longer. *Banda*, 385 F. Supp. 3d at 1119; *Jamal,* 385 F. Supp. 3d at 860. View in this light, the completion of briefing before the BIA means only that one stage of a potentially length appellate process may soon conclude. Thus, this factor also favors Dovlatov.

### 4.1.3    The third *Banda* factor weighs in Dovlatov's favor.

The third *Banda* factor examines the conditions of the petitioner's detention. "The more that the conditions under which the noncitizen is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing." *Banda*, 385 F. Supp. 3d at 1119 (citation omitted). Courts have recognized that the conditions at NWIPC resemble those in prisons. *Bojorge-Sequeira v. Geo Grp. Inc.*, No. 2:25-CV-01807-KKE-GJL, 2026 WL 288378 * 5 (W.D. Wash. Jan. 15, 2026) (collecting cases), *report and recommendation adopted,* No. 2:25-CV-01807-KKE-GJL, 2026 WL 285657 (W.D. Wash. Feb. 3, 2026). Dovlatov's declaration describes conditions consistent with these findings, including inadequate medical care, overcrowding, and limited exposure to the outdoors. Dkt. No. 2 ¶¶ 15–16. Respondents do not argue otherwise. This factor also favors Dovlatov.

### 4.1.4    The fourth and fifth *Banda* factors.

The fourth and fifth *Banda* factors consider delays in the removal proceedings caused by the petitioner and the government, respectively. As for delays caused by Dovlatov, Respondents argue he has been a source of delay because he did not claim fear of return until February 14, 2025, even though he was

encountered by immigration authorities on December 23, 2024. Dkt. No. 5 at 6–7. They also point to continuances Dovlatov requested during his immigration proceedings and during his BIA appeal. The record confirms that Dovlatov did request continuances for his credible fear interview, Dkt. No. 6 at ¶¶ 8–9, at least three for master calendar hearings, *Id.* ¶¶ 11–14, and a three-week extension for the briefing schedule for his BIA appeal, *Id.* ¶ 18. But these delays were relatively short in duration and directed toward important interests like securing counsel or interpreters. Dkt. No. 2 ¶ 9. Courts do not weigh delays against a petitioner when they are incurred in good faith pursuit of counsel and meaningful access to the proceedings. *See Banda*, 385 F. Supp. 3d at 1119–20. As such, the Court finds this factor neutral.

As for the fifth factor—delays caused by the Government—Respondents concede that this factor slightly favors Dovlatov. The record shows that Dovlatov languished in detention for nearly four months before the government issued an NTA initiating removal proceedings. Dkt. No. 2 ¶ 6. And once proceedings were underway, the immigration court unilaterally advanced Dovlatov's merits hearing by three weeks—over counsel's objection—leaving inadequate time to prepare. The fifth factor weighs in Dovlatov's favor.

### 4.1.5    The sixth *Banda* factor is neutral.

Under the sixth *Banda* factor, the Court considers the likelihood that removal proceedings will result in a final order of removal. *Banda*, 385 F. Supp. 3d at 1120. Respondents argue that Dovlatov's appeal of the IJ's order will likely not

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 6

change the fact that he is subject to a final removal order. However, when there is a pending appeal after a denial of relief, courts weigh this factor as neutral. *Banda*, 385 F. Supp. 3d at 1120. *Djelassi v. ICE Field Off. Dir.*, 434 F. Supp. 3d 917, 932 (W.D. Wash. 2020). This factor is neutral.

### 4.1.6    Weighing the factors.

In sum, the first four factors weigh in Dovlatov's favor. Two factors—delays caused by the petitioner and likelihood of a final removal order—are neutral. No factors weigh in Respondent's favor, and Respondents concede the first and most important factor—the length of Dovlatov's detention. On balance, the *Banda* test favors granting Dovlatov a bond hearing. Dovlatov's "continued mandatory detention under § 1225(b) has become unreasonable and [] due process requires the Government to provide [him] with a bond hearing." *Banda*, 385 F. Supp. 3d at 1120.

### 4.2    Evidentiary standard at the bond hearing.

Respondents acknowledge that this Court has applied the clear and convincing evidence standard in granting bond hearings in similar cases, but they contend that Dovlatov should bear the burden of proof to show that he is not a flight risk by the preponderance of the evidence. Dkt. No. 5 at 8. Respondents provide no authority for this request, which contravenes Ninth Circuit precedent. Respondents are required to prove by clear and convincing evidence that a detained person poses a flight risk or a danger to the community at the time of the individualized bond hearing. *Singh v. Holder*, 638 F.3d 1196, 1204 (9th Cir. 2011), abrogated on other grounds by *Jennings v. Rodriguez*, 583 U.S. 281 (2018); *see also Rodriguez v.*

*Robbins*, 715 F.3d 1127, 1144 (9th Cir. 2013) (holding "the constitutionally grounded hearing requirements set forth in *Singh* are also applicable [to bond hearings for those detained under § 1225(b)]")); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1199 (9th Cir. 2022) (explaining that clear-and-convincing-evidence standard in *Singh* was based on general principles of due process); *Banda*, 385 F. Supp. 3d at 1120. At the bond hearing, Respondents must bear the burden of justifying Dovlatov's continued detention by clear and convincing evidence. *Id*. at 1208.

### 4.3    The scope of relief.

Having found that Dovlatov's detention has become unreasonable, the Court turns to the appropriate relief. Dovlatov asks for his "release [] unless [Respondents] provide a custody hearing before an immigration judge within 14 days." Dkt. No. 9 at 7. Courts in this District have ordinarily declined to order immediate release, holding that "[t]here is no authority" to support a claim that a petitioner "is entitled to an order of release." *See, e.g.*, *Maliwat*, 2025 WL 2256711, at * 9; *Hong,* 2022 WL 1078627, at *7 (explaining that the remedy for prolonged detention is a bond hearing); *Pasillas v. ICE Field Off. Dir.*, No. 2:21- cv-681-RAJ, 2021 WL 8084206, at *7 (W.D. Wash. Oct. 18, 2021), *report and recommendation adopted*, 2022 WL 1127715 (W.D. Wash. Apr. 15, 2022) (granting bond hearing but not release). Instead, the proper remedy for prolonged detention is a bond hearing. *See, e.g.*, *Maliwat*, 2025 WL 2256711, at *9; *Hong*, 2022 WL 1078627, at *7; *Pasillas v. ICE Field Off. Dir.*, No. 2:21-cv-681-RAJ, 2021 WL 8084206, at *7 (W.D. Wash. Oct. 18, 2021), *report and recommendation adopted*, 2022 WL 1127715 (W.D. Wash.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 8

Apr. 15, 2022). The proper remedy for prolonged detention is an individualized bond hearing.

## 5.  CONCLUSION

Accordingly, the Court finds and orders the following:

1. Dovlatov's prolonged detention under 8 U.S.C. § 1225(b) without a bond hearing violates the Due Process Clause of the Fifth Amendment.

2. The Petition for a Writ of Habeas Corpus is GRANTED. Dkt. No. 1.

3. Within FOURTEEN (14) days of this order, Respondents must provide Petitioner with an individualized bond hearing that complies with the requirements of *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011). In the event that bond is granted, Respondent is ORDERED to immediately release Petitioner

4. If the individualized bond hearing is not conducted within fourteen days of this order, Petitioner MUST be released immediately under appropriate conditions of supervised release.

5. Petitioner and Respondents MUST file a status report on the status of Petitioner's bond hearing no later than FIFTEEN (15) days from this order. The status report MUST detail if and when the bond hearing occurred, if bond was granted or denied and, if denied, the reasons for that denial.


Dated this 16th day of April, 2026.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 9

Jamal N. Whitehead
United States District Judge

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 10